# JANUARY TERM, 1895.*

LIZZIE CLARK ROEHM V. THE ESTATE OF DAVID C. CLARK, DECEASED.

*Will—Payment of legacy—Support of family of testator.*

1. A testator appointed his widow sole executrix of his will and guardian of his minor children, and directed that during their minority, from the income of his entire estate, which was placed under her control, she should maintain a home for herself and said children, provide for their proper education, pay certain legacies, and add the remainder of the income, if any, to the estate. And it is held that the legacies must yield to the necessities of the family, which must first be provided for.

2. The fact that the executrix fails to reduce expenses, as her altered circumstances would seem to require, is unimportant, so long as the income from the estate is not extravagantly used.

Error to Wayne. (Hosmer, J.) Argued January 9, 1895. Decided January 22, 1895.

Appeal from an order of the probate court granting the petition of a legatee for the payment of a legacy or the removal of the executrix. Petitioner brings error from an order of the circuit court reversing the order of the probate court. Affirmed. The facts are stated in the opinion.

*James C. Smith, Jr.* (*Hoyt Post,* of counsel), for appellant.

---

*Edwin F. Conely* and *Orla B. Taylor*, for the estate.

HOOKER, J. David C. Clark, late of Detroit, who died
June 3, 1888, left a widow, Marcella Clark, and six children,
of whom petitioner is one. Of these children, one died
May 15, 1891, and three others were minors, aged, respect-
ively, 14, 10, and 8 years. The first clause of Mr. Clark's
will appointed his wife, Marcella Clark, executrix of the
will and testamentary guardian of the minor children, and
requested that no bond be required from her in either
capacity. The second clause directed that unsecured debts
be paid promptly out of his personal estate. The third
clause directed that a mortgage to the Detroit Savings
Bank, of $18,000, be paid out of the testator's share in
the common stock of the partnership of Clark, Vinton &
Co. It advised his wife to pay from the proceeds of his
life insurance (which, by its terms, belonged to her) at least
$10,000 upon the principal of this mortgage, and provided
for her repayment, in case of her compliance, by a con-
ditional bequest of a sufficient sum from said partnership
property to reimburse her. The fourth, fifth, and sixth
clauses of the will were as follows:

"*Fourth.* Subject to the bequest to my wife, above, and
subsequent directions of this will, I give, devise, and be-
queath to each of my children, Nettie M. Clark, Lizzie A.
Clark, D. Charles Clark, Mary Clark, Hazel K. Clark, and
Harold Shaw Clark, an equal, undivided share of my real
and personal estate, to them and to their heirs and assigns
forever; but the right of possession of the shares so given
to them shall not become operative until the youngest
child who shall survive to reach majority shall become of
age. The foregoing devise and bequest to my children
shall also be subject to the condition that if any one of
my children shall die under age, and without issue, the
share of such child I give, devise, and bequeath, in equal
parts, to the remaining children. But the shares of each,
under the foregoing devise and bequest, shall be deemed
to be vested thereby, so that any one or more of my said

children dying before the youngest becomes of age, having reached majority, or leaving issue, the share of such child shall go to such issue, or in accordance with a lawful will made by such child after becoming of legal age.

"*Fifth.* Before distribution shall be made of my undivided estate to my children, as provided above, provision shall be made for my wife; and, to that end, I give, devise, and bequeath to my wife, Marcella Clark, for her natural life, the use of one-third of my personal and real estate, less the amount of insurance upon my life she may have received, and after her death the estate so set off to her shall become the property of my said children, in all respects, as the remainder of the estate according to the provisions of the fourth paragraph of this will. I also give to my wife all our household furniture of every kind.

"*Sixth.* Pending the minority of the youngest of my said children who shall live to be 21 years of age, I direct my executrix to collect my personal estate, and invest the same, as far as practicable, in good, interest-bearing security, and collect the entire income thereof; also, to take and retain possession and control of my real estate, to collect the rents, to keep the property in good repair, and to pay the taxes and insurance upon the same. For the purpose of such control, I authorize her to make leases for such periods as she may deem best, not extending more than 3 years beyond the time when the youngest child will reach majority. From the income of the entire estate so to be collected by my wife, as executrix, I direct her to maintain a home for herself and all our children, and to provide for their proper education; and if anything can be saved from the income, after proper and comfortable provision for the family, and the payments here following, I direct that it be added to the capital of the estate. From the annual income, I direct my executrix also to pay to each of my daughters, Nettie M. and Lizzie A. Clark, and to my daughters Mary and Hazel K., when they become 21 years of age, respectively, the sum of $125 each year, so long as they remain at home, and, in case they cease to live at home with my family, then to give them each the sum of $300, annually, payable quarterly; such payments to begin at the end of one year from the time this will be proved. I recommend my executrix to give to my son D. Charles similar payments after he becomes of legal age."

Mrs. Clark has managed the estate, with the aid of Mr. Bissell, her counsel, and possibly her daughter, the petitioner. In March, 1892, a petition was filed in the probate court by Mrs. Roehm, the daughter of Mr. and Mrs. Clark, asking that the latter be required to pay the petitioner the legacy provided by the sixth clause of the will, or, in default thereof, that she be removed from her office as executrix; and, being carried to the circuit court, the prayer of petitioner was denied, from which decision she has appealed to this Court.

The sixth clause of the will directs the maintenance of a home for the widow and all the children, and the education of the latter, from the income of the entire estate, which is subjected to this burden and the payment of the legacies mentioned. We understand, from the argument, that it is not disputed that the legacies must yield to the necessities of the family, as, in our opinion, the language of the will implies, and that, therefore, the case resolves itself into the question of the sufficiency of the fund for these purposes. It appears that Mrs. Clark advanced $13,000 of her own insurance money to pay on the mortgage, and the Clark, Vinton & Co. property was sold. At the close of the first year, the estate consisted of the following property:

| | |
|---|---|
| 1. Second avenue block (four houses and lots), at. | $25,000 |
| 2. Brainard street house and lot | 6,500 |
| 3. Bagg street house and lot | 11,000 |
| 4. High street house and lot | 2,800 |
| 5. Half interest in Otsego county lands | 720 |
| 6. Henry street houses and lots | 12,500 |
| Total | $58,520 |

The Bagg street house was, and still is, the homestead, and appears to have consisted of a valuable piece of land, upon which was a reasonably good house.

It is contended on behalf of the petitioner that Mrs.

Clark has been extravagant (1) in her expenditures for the family; (2) in remaining in the Bagg street house, instead of taking one of the less valuable places; (3) in building a $3,000 vault.

In support of the first of these propositions, it is said that she paid for the family the following sums:

| | |
|---|---|
| For the first 13½ months | $4,136 35 |
| For the second year | 3,097 18 |
| For the third year | 3,612 36 |

These items appear in accounts which seem to have been drawn by Bissell, signed by Mrs. Clark, and filed in the probate court. The accounts show that for the year ending July 15, 1890, the gross receipts from the estate amounted to $3,412.92; disbursements, in the nature of expenses incident to the estate, $2,088.96; leaving a balance, subject to use for the support of the family and payment of the legacies, of $1,323.96.

The next account (July 15, 1890, to August 1, 1891) shows:

| | |
|---|---|
| Gross receipts | $3,563 92 |
| Expenses of the estate | 2,717 78 |
| Balance | $ 846 14 |

The year ending August 1, 1892, makes a better showing:

| | |
|---|---|
| Total receipts | $3,430 92 |
| Expenses (which included the funeral of the child who died) | 2,025 99 |
| Leaving a balance of | $1,404 93 |

The fact remains that the actual expenses of supporting the family are shown to have been much more. Perhaps there is room for saying that Mrs. Clark has not succeeded in reducing expenses as her altered circumstances seem to require, but that fact is unimportant, so long as the income from the estate, which is chargeable with this burden, has not been extravagantly used. We are of the

opinion that the circuit court reached a just conclusion when it determined that the petitioner was not entitled to relief, and dismissed the petition without prejudice to another application when altered circumstances may show that it is warranted.

His judgment will therefore be affirmed, with costs.

The other Justices concurred.

104 6
119 70
104 6
134 ᶜ391

104 6
136 686

104 6
140 466
104 6
142 ²395

104 6
j147 ³270
148 ³658

104 6
158 ³392